UNITED STATE BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>Yasar Demir,<br><br>                     Debtor<br>―――――――――――――――――――<br>Burak Dilbay,<br><br>                     Plaintiff<br><br>v.<br><br>Yasar Demir,<br><br>                     Defendant | Bankruptcy No. 11-bk-52053<br><br>Chapter 7<br><br>Adversary No. 12-ap-661 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER TRIAL

Debtor and Adversary Defendant, Yasar Demir, filed for bankruptcy relief under chapter 7. Creditor and Adversary Plaintiff, Burak Dilbay, objected to the Debtor's discharge under §§ 727(a)(2)(A) (Count I), 727(a)(3) (Count II), and 727(a)(4)(A) (Count III), alleging that Debtor transferred or concealed property of the debtor when he removed certain restaurant equipment from Istanbul Restaurant, that Debtor failed to keep adequate records from which the debtor's business transactions might be ascertained, and that Debtor made a false oath by omitting his ownership of property and income from his bankruptcy schedules.

Trial was held over three afternoons on September 16, 17, and 19 of 2013. Following trial, the parties were invited to file proposed findings of fact and conclusions of law, and present arguments in writing. For the following reasons, Debtor's discharge is denied under § 727(a)(4)(A) (Count III) for making false oaths, but not under the other counts of this Adversary Proceeding.

### Findings of Fact

Debtor is a chef specializing in Turkish style foods and a sometime restaurant owner. In 2009, Debtor and Plaintiff orally agreed to go into business operating a Turkish style restaurant. On May 18, 2009, Debtor signed a lease for restaurant space at 3613

North Broadway Street in Chicago. On May 19, 2009, DHD Group, Inc. ("DHD Group") was incorporated. Some time after that, they opened "Istanbul Restaurant" at the 3613 North Broadway location, with each party contributing his time and money to get the restaurant open.

On February 15, 2010, the parties entered into a stock sales agreement wherein Plaintiff conveyed 100% of the shares of DHD Group to Debtor for $22,000, to be paid in $2,000 installments per month over the following year. The "Certificate of Stock Sales Agreement" purported to transfer all shares of DHD group. Further, the Agreement recited that "The assets as listed on exhibit A owned by the Seller and/or the Corporation for the operation of the Business and being acquired by The buyer hereunder is in its possession. All assets to be taken in working condition," but there was no exhibit A attached to the Agreement.

Later, Debtor incorporated AYD Group, Inc. ("AYD Group"), which continued doing business under the name of Istanbul Restaurant at the same location. Over the next several months, the relationship between the parties soured. Around July, 2010, Plaintiff filed a lawsuit against Debtor in state court for breach of contract. On August 4, 2010, Plaintiff filed a UCC financing statement reciting a purported security interest in the equipment of Istanbul Restaurant, listing individual pieces of equipment. After a jury trial in November 2011, Dilbay obtained a dollar judgment in his favor for $22,000.

On February 2, 2011, while the state court case was pending, Plaintiff observed Debtor moving equipment, including a stove, coolers, a television, a pizza oven, and a "point of sale" system (consisting of cash registers and computers for processing credit card transactions) out of Istanbul Restaurant onto a U-Haul truck. The equipment was moved to an empty restaurant storefront in Bensenville, Illinois, which would eventually open as "Kebab House." There is a dispute as to who owned the equipment when Debtor removed it from Istanbul Restaurant. Plaintiff testified, "I'm calling it mine because I purchased those with the DHD Group's money. I sold the business, including the equipment, but none of it was done the way it was supposed to." Further, Plaintiff asserted a lien against the restaurant equipment, as evidenced by the UCC financing statement filed by him. Plaintiff also testified that creditors continue to pursue him under a personal guarantee that he signed with regard to the "point of sale" system used in Istanbul Restaurant, despite his protestations that, in fact, Debtor has possession of the system.

Fatma Akturk, Plaintiff's wife, testified that before Debtor removed the restaurant equipment from Istanbul Restaurant, it was operating normally as a restaurant. When the equipment was moved, the Istanbul Restaurant storefront looked empty, with most of the furniture left inside the premises (belonging to the landlord), having been piled in the center of the restaurant. The TV, point of sale system, a stove, a fryer, and a pizza oven were moved on February 20, 2011 in a U-Haul truck or Demir's car. The removal of that equipment ended business operations of Istanbul Restaurant, and could not be considered within the ordinary course of a restaurant business.

Some of the restaurant equipment that was removed was eventually sold by Debtor to Ahmet Rushid, the owner of Kebab House in Bensenville. Some other equipment was said by Debtor to have been abandoned as worthless. Debtor testified that he gave the point of sale system to Rushid as a gift in appreciation for financial assistance that Rushid gave to Debtor, although his attorney argued after trial that the transfer was in consideration for that financial assistance. After disposing of the equipment he had removed from Istanbul Restaurant, Debtor began working at Kebab House for $450 per week. The exact start date is not clear, but Debtor testified that he started working at Kebab House about two years before trial, or around September 2011. In his answer to Interrogatory No. 7 of the First Set of Interrogatories, ("Identify every source of income you have had in the last six (6) years, including, but not limited to, any cash you took from your restaurants"), Debtor's answer stated that, "Since 2011, [Debtor] has been a W-2 employee."

Around February or March, 2012, the owner of Kebab House (Ahmet Rushid) died, and his heirs sold the restaurant to Debtor's wife for monthly installment payments. There was no testimony as to the purchase price, and no sale document was offered into evidence.

One month before trial in this Adversary Proceeding, Plaintiff and Fatma Akturk visited Debtor's new restaurant in Bensenville, Kebab House. Plaintiff and Akturk both testified that they went inside that restaurant but did not stay because they knew they were not welcome. Plaintiff further testified that he saw the same 46-inch TV and point of sale system at the restaurant, basing his conclusion that they were the same on his personal familiarity with those items when they were at Istanbul Restaurant.

Debtor filed his bankruptcy petition for relief under chapter 7 on December 30, 2011.

Both parties offered into evidence bank statements, including check images, of DHD group for the period from July 2009 to January 2010.

Additional findings of fact appear in the following Conclusions of Law.

3

## Conclusions of Law

### Jurisdiction

Jurisdiction lies over this objection to proof of claim under 28 U.S.C. § 1334 and is referred here by Internal Procedure 15(a) of the District Court for the Northern District of Illinois. This matter is an objection to discharge, and is therefore a core proceeding under 28 U.S.C. § 157(b)(2)(I). This case only concerns issues relating to dischargeability of the debtor. Neither party has requested adjudication of any underlying debts. An objection to discharge "stems from the bankruptcy itself," and may constitutionally be decided by a bankruptcy judge. *Stern v. Marshall*, 131 S.Ct. 2594, 2618 (2011).

### Count I: § 727(a)(2)(A) Asserted Transfer or Concealment of Property

Section 727(a)(2)(A) provides that the court shall grant a discharge unless the debtor, with intent to hinder, delay, or defraud a creditor has transferred, removed, destroyed, mutilated, or concealed property of the estate within one year of the date of the filing of the petition or property of the estate after the date the bankruptcy petition was filed.

Two elements must be proven, before a debtor's discharge will be denied under this provision; (1) a transfer or concealment of property of the bankruptcy estate and (2) a subjective intent to hinder, delay, or defraud creditors. The burden of persuasion is on the plaintiff. *In re Stamat*, 395 B.R. 59, 70 (2008). "In bankruptcy, 'exceptions to discharge are to be construed strictly against a creditor and liberally in favor of the debtor.'" *Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011) (quoting *In re Kontrick*, 295 F.3d 724, 736 (7th Cir.2002)).

The alleged removal or concealment occurred when Debtor moved equipment from Istanbul Restaurant in February, 2011, which was within one year prior to the December 30, 2011 petition date. It is unclear who exactly had ownership of the restaurant equipment that was moved, because the February 10, 2010 agreement had gaps as discussed earlier. Plaintiff claimed at trial both that he owned the equipment, that it had been bought with DHD Group money, and that he had a security interest in it. Debtor testified that the equipment was his, although there was some ambiguity to his testimony as to whether the property was his personally, or his through his ownership interest in stock of DHD Group.

Plaintiff did not establish by evidence that he had a security interest in the property. A UCC financing statement, standing alone, and not signed by the debtor, does not create a security interest. 810 ILCS 5/9-308 (perfection of a security agreement requires

4

"attachment"); 810 ILCS 5/9-203(b) (requirements for attachment); *See In re Outboard Marine Corp.*, 300 B.R. 308 (2003) (explaining the difference). Plaintiff has not provided any evidence that any condition for "attachment" was met by him.

The most plausible explanation is that the equipment belonged to DHD Group, because, as Plaintiff testified, Plaintiff bought the equipment removed from Istanbul Restaurant with DHD Group's money. Since the equipment was property of DHD Group, and not Debtor, it never became property of the bankruptcy estate. As a result, any transfer or concealment of the property did not affect property of the bankruptcy estate. Thus, Debtor's discharge cannot be denied under § 727(a)(2)(A).

Count II: § 727(a)(3) Failure to Keep Adequate Records

Section 727(a)(2) provides that a discharge should not be granted if the debtor, concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information, including books, documents, records, and papers from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case.

The party alleging a violation under Bankruptcy Code § 727(a)(3) has the initial burden of proving that books and records produced by the debtor are inadequate. *In re Costello*, 299 B.R. 882, 897 (Bankr. N.D. Ill. 2003). "In bankruptcy, 'exceptions to discharge are to be construed strictly against a creditor and liberally in favor of the debtor.'" *Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011).

Plaintiff argues that Debtor's records are inadequate, but does not provide adequate evidence or analysis as to the condition or adequacy of those records. Before trial, Plaintiff withdrew his motion to compel discovery, and Plaintiff's counsel then represented that she was satisfied with production that had been received. During trial, the only financial records entered into evidence were bank statements of DHD Group for July 2009 through January 2010, including check copies. These records show DHD Group's financial state before the stock sales agreement transferring ownership from Plaintiff to Debtor. In his Statement of Facts and Conclusions of Law after trial, Plaintiff suggests the court should conclude that "Defendant failed to provide the trustee and the court with any paperwork (e.g. Check stubs, tax returns, etc.) that would disclose his income and provide an accurate portrayal of his financial condition." (Docket 82 ¶26.) However, Plaintiff did not provide any proof or analysis of the documents in evidence to show that such documentation was

materially lacking. Plaintiff, therefore, has not met his burden as to Count II, and Debtor's discharge will not be denied under § 727(a)(3).

Count III: § 727(a)(4)(A) False Oaths

Section 727(a)(4)(A) provides that the court shall grant discharge to a debtor unless the debtor knowingly and fraudulently, in connection with the case, makes a false oath or account.

A party alleging the debtor has violated his oath has to prove by preponderance of the evidence that: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *In re Stamat*, 635 F.3d 974, 978 (7th Cir. 2011). "In bankruptcy, 'exceptions to discharge are to be construed strictly against a creditor and liberally in favor of the debtor.'" *Id.* at 979. Even though the initial burden is on the plaintiff, "once it reasonably appears that the oath is false, the burden falls upon the bankrupt to come forward with evidence that he has not committed the offense charged." *In re Tully*, 818 F.2d 106, 110 (1st Cir. 1987) (quotation omitted).

The purpose of § 727(a)(4)(A) is to "enforce the debtor's duty of disclosure and to ensure that the debtors provide reliable information to those who have an interest in the administration of the estate." *In re Broholm*, 310 B.R. 864, 879 (Bankr. N.D. Ill. 2004). For purposes of § 727(a)(4), a debtor's petition and schedules, statement of financial affairs, statements made at a § 341 meeting, and testimony at a Rule 2004 examination all constitute statements that are made under oath. *Id.* Filing false schedules with material omissions or representations with intent to mislead creditors constitutes a false oath under § 727(a)(4).

Fraudulent intent may be proven by a showing of reckless disregard for the truth. *Stamat v. Neary*, 635 F.3d 974, 982 (7th Cir. 2011). "[A]lthough not every single item of assets need be scheduled and valued, there comes a point when the aggregate errors and omissions cross the line past which a debtor's discharge should be denied." *In re Stamat*, 395 B.R. 59, 74 (Bankr. N.D. Ill. 2008) (internal quotation omitted). "The cumulative effect of a number of false oaths by the debtor with respect to a variety of matters establishes a pattern of reckless and cavalier disregard for the truth by the debtor." *Id.*

Finally, the plaintiff must show that the false statements made by the debtor relate materially to the bankruptcy case. A statement is considered material for purposes of

§ 727(a)(4) if it relates to the debtor's estate, involves the discovery of assets, or concerns the disposition of the debtor's property or his entitlement to discharge. *Id.*

Plaintiff argues that Debtor made false oaths by failing to account for his ownership of restaurant equipment, a car that he drives, his "current ownership in businesses," and his income.

### 1. Restaurant Equipment

Plaintiff first argues that Debtor made false oaths by omitting any disclosures about the transfers of restaurant equipment that he removed from Istanbul Restaurant in answer to Question 10 of the Statement of Financial Affairs. Question 10 asks, "List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case." Debtor now argues that the transfers were in the ordinary course of business, and therefore did not have to be disclosed. Factors for determining whether a transaction was in the ordinary course include "the length of time the parties were engaged in the type of transaction at issue, whether the amount or form of tender differed from past practices, and whether the debtor engaged in any unusual collection or payment activity. *Stamat v. Neary*, 635 F.3d 974, 980 (7th Cir. 2011) (internal quotation omitted).

Here, the burden of proof was on Plaintiff to prove that the statement made under oath was false by proving that Debtor did not list all his property, other than property that he transferred in the ordinary course of the business or financial affairs of the debtor immediately preceding commencement of his bankruptcy case. A sworn answer to the question in the Statement of Financial Affairs is not false if an undisclosed transfer was made in the ordinary course.

Plaintiff's wife testified that before Debtor removed the restaurant equipment from Istanbul Restaurant, it was a restaurant operating normally. When the equipment was moved, the restaurant storefront was left empty except for furniture inside the premises (belonging to the landlord) left in the restaurant. The TV, point of sale system, a stove, a fryer, and a pizza oven were moved in a U-Haul truck or Demir's car. The moving out of equipment ended business operations of Istanbul Restaurant, and could not be considered within the ordinary course of a restaurant business.

After the restaurant equipment was moved from Istanbul Restaurant, Debtor testified that he had either transferred or abandoned the equipment prior to filing for

7

bankruptcy. He says that some coolers were sold for $150, the point of sale system was given to Ahmet Rushid in exchange for financial assistance leading up to the bankruptcy including filing fees, and a pizza oven was abandoned as assertedly worthless. Debtor further testified that he owned no more restaurant equipment that had formerly been used at Istanbul Restaurant.

In his testimony, Debtor characterized the transfer of the point of sale system as a "gift," and also stated that the "gift" was in exchange for financial help, including with the cost of the bankruptcy filing. If the transfer of the point of sale system to Rushid was a gift, then the transfer should have been disclosed in Question 7 of the Statement of Financial Affairs, which asks, "List all gifts or charitable contributions made within one year immediately preceding the commencement of this case," excepting some small gifts to family and charity. Further, if the transfer was in exchange for the expenses of the bankruptcy case, then the transfer should have been disclosed in Question 9 of the Statement of Financial Affairs, which asks, "List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys for . . . relief under bankruptcy law within one year immediately preceding the commencement of this case."

There was no testimony showing that DHD Group transferred property to Debtor, but Debtor testified that he made a gift of the point of sale equipment to Rushid. In answer to Interrogatory No. 3, Debtor represented that he "no longer owns DHD Group, Inc. (Istanbul Restaurant) which was dissolved on 10/08/10." There was no account of how AYD Group came to own any restaurant equipment, or how AYD Group disposed of it. In any case, it appears from all the evidence that DHD Group was the original owner of the point of sale system, and somehow Debtor obtained ownership of it before giving it to Rushid. Whatever the intermediate transfers were, these transfers would not have been the ordinary course of Debtor's financial affairs at Istanbul Restaurant or any other restaurant.

Thus, the transfers of restaurant equipment were not in the ordinary course of Debtor's business, and the omission of the transfers from Question 10 made Debtor's oath false.

### 2. Debtor's Wife's Friends' Car

Plaintiff also argues that Debtor omitted the car he drives from his schedules. Debtor testified that he is still driving the same car as the day he moved the restaurant equipment from Istanbul Restaurant, but that he does not own the car because title belongs

to a friend of his wife. Rather, he drives it in exchange for monthly installment payments to his wife's friend. Not only is the car omitted from his Schedule B (Personal Property), but the installment payments purportedly paid to the wife's friend is omitted from Schedule J, line 13: "Installment payments: a. Auto." No innocent explanation for this arrangement has been established by evidence. Together with the omission of any car payments from Schedule J, this arrangement looks more like a scheme to keep creditors from reaching the equity in his car to pay his debts. Debtor's facile explanation of the omission of the car from his schedules and Statement of Financial Affairs was not credible.

If, on the other hand, the arrangement between Debtor and his wife's friend had been entirely innocent, Debtor would have had a duty to disclose the car in Question 14 of the Statement of Financial Affairs, "List all property owned by another person that the debtor holds or controls." Debtor answered "none" to Question 14. Thus, regardless of whether Debtor does or does not have ownership of the car, he made false oaths on his schedules and Statement of Financial Affairs.

### 3. Debtor's Ownership Interest in Business

Plaintiff further argues that Debtor had an obligation to disclose his ownership interest in any businesses. Question 18 of the Statement of Financial Affairs asks, "If the debtor is an individual, list the names . . . of all businesses in which the debtor was . . . partner in a partnership . . . or in which the debtor owned 5 percent or more of the voting or equity securities within six years immediately preceding the commencement of the case."

Debtor listed his ownership of AYD Group, but did not list ownership of DHD Group, which he acquired from Plaintiff. Further, he did not list his 20% partnership interest in a Cousin's Sub restaurant which he revealed in answer to Interrogatory 2 of the First Set of Interrogatories submitted by Plaintiff as part of pretrial discovery. Therefore, Debtor's omissions of his ownership interest in DHD Group and the Cousins' Sub restaurant made his original oath false.

Plaintiff further argues that Debtor's current ownership interest in a restaurant is also an omission from his Statement of Financial Affairs. Question 18 asked for ownership interests "within six years immediately preceding the commencement of the case." Here, Debtor testified that his wife currently owns Kebab House, which she bought seven or eight months prior to trial – more than two years after the commencement of the bankruptcy case. There is no contrary evidence showing when Debtor's wife first took an ownership interest in Kebab House. Nor is there any evidence that Debtor had any ownership interest

9

in Kebab House prior to filing his bankruptcy case, so that interest did not violate Debtor's oath.

### 4. Debtor's Employment

Plaintiff further argues that Debtor had an obligation to disclose his income from employment. Debtor listed zero income on his Schedule I, and left blank the box labeled "Employment." At trial, Debtor testified that he had been worked as an employee at Kebab House for the past two years, which would mean that his employment at Kebab House began around September, 2011. Further, in response to Interrogatory No. 7 of the First Set of Interrogatories, Debtor answered, "Since 2011, [Debtor] has been a W-2 employee." Debtor filed for bankruptcy on December 30, 2011. Although the exact date when Debtor began employment was not established in evidence, the most plausible inference is that he was employed and making income before his December 30 petition date. Thus, the omission of that income or employment from Schedule J made his oath false.

### 5. Fraudulent Intent

Any of these omissions standing alone might not lead to an inference of fraudulent intent. However, these are not mere isolated omissions. Rather, they represent a pattern of "a pattern of reckless and cavalier disregard for the truth by the debtor." *See In re Stamat*, 395 B.R. 59, 74 (Bankr. N.D. Ill. 2008). Such a pattern of reckless and cavalier disregard for the truth by the debtor rises to the level of fraudulent intent. *Id.*

This pattern of reckless and cavalier disregard for the truth has continued into this litigation. Not only did Debtor omit the transfer of the point of sale system in his Statement of Financial Affairs, in answers to Interrogatories 2 and 3 of The Second Set of Interrogatories submitted through pretrial discovery, Debtor stated that the point of sale system was "returned to the supplier." In court, when asked about what happened to the point of sale system, Debtor answered that he had given them to Ahmet Rushid, either as a gift or in exchange for financial help. Thus, Debtor has exhibited a pattern of reckless and cavalier disregard for the truth, which is enough for a finding of fraudulent intent.

### 6. Materiality

Finally, Plaintiff must prove that the omissions were material. "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984); *In re Cole*, 378 B.R. 215, 223 (Bankr. N.D. Ill. 2007) (quoting *In re Chalik*);

*In re Costello*, 299 B.R. 882, 901 (Bankr. N.D. Ill. 2003) (quoting *In re Chalik*). "A false oath may be material even though it does not result in any detriment or prejudice to the creditor." *In re Fink*, 351 B.R. 511, 529 (Bankr. N.D. Ill. 2006). A Seventh Circuit opinion pointed out that "the successful functioning of the Bankruptcy Code hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." *Stamat v. Neary*, 635 F.3d 974, 983 (7th Cir. 2011) (internal quotation omitted). As an Eleventh Circuit opinion has explained,

> A materiality standard based on an omitted item's relative value to the amount of assets and liabilities at issue in the case would encourage debtors to pick and choose which information to disclose based on the debtor's own assessment of value or significance to the bankruptcy administration. Because that would frustrate the policy of full disclosure, creditors are entitled to judge for themselves what will benefit, and what will prejudice, them.

*In re Phillips*, 476 F. App'x 813, 819 (11th Cir. 2012) (internal quotation omitted).

Here, some omissions might individually be deemed immaterial to creditors, but all omissions and misstatements together are certainly material to creditors. Therefore, the omissions on the Debtor's schedules and Statement of Financial Affairs are material.

## Conclusion

For the foregoing reasons, the Court will separately enter judgment in favor of the Debtor-Defendant under §§ 727(a)(2)(A) (Count I) and (a)(3) (Count II), and in favor of Plaintiff sustaining the objection to discharge under § 727(a)(4)(A) (Count III).

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 7th day of November, 2013.